## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICE SHENEL LEFTWICH** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO.  15-300** |
| **JACOB J. LEW** | : | |

**KEARNEY, J.**                                           **December 14, 2015**

## MEMORANDUM

Patrice S. Leftwich claims her employment supervisors at the Internal Revenue Service ("IRS") discriminated against her in job assignments because she is African-American and then retaliated against her for raising her discrimination complaints.  She needs to adduce evidence of racial animus or retaliation tied into her complaints and cannot now rely on her speculation and personal statement. Ms. Leftwich cannot bring federal civil rights claims to the jury. Her claims, , are not supported by facts adduced in discovery evidencing racial discrimination, hostile work environment or retaliation. Absent genuine issues of material fact concerning the dispositive legal issues, we grant her employer's motion for summary judgment in the accompanying Order,

### I.    UNDISPUTED FACTS[1]

Leftwich, an African-American woman, began working for the IRS in November 2009 and continues to work for the IRS.[2] In 2012, Leftwich held the position of Contact Service Representative, Grade 7, in the IRS Accounts Management Operation, Wage and Investment Division, assigned to Team 403, Department 4, in Philadelphia.[3] Leftwich reported to Nancy Ortiz ("Ortiz"), and Mary Salnaitis ("Salnaitis").[4] Both Ortiz and Salnaitis are Caucasian.[5]

Leftwich also reported up the ladder to Randal Lutz, a Caucasian male as her third level supervisor.[6] Lutz manages approximately six hundred (600) employees.[7]

Leftwich alleges disparate treatment and harassment based on race as well as retaliation for engaging in protected activity with the Equal Employment Opportunity Commission ("EEOC"). Leftwich alleges a pattern of race discrimination between April and November 2012, and cites sixteen (16) incidents as racially motivated employment discrimination:[8]

(1) In April 2012, her supervisors did not select Leftwich to work on a "Business Master File" ("BMF") project.[9] Instead, Ortiz selected Leftwich to serve on her team's "Spirit Committee."[10]

(2) In July 2012, Leftwich attended a training session with Ortiz and other employees. When she returned to the session after leaving the room to take a phone call, she found her computer screen turned upside down.[11]

(3) On July 19, 2012, Leftwich asked Ortiz for access to her "drop file,"[12] but Ortiz did not allow Leftwich to review the file then because Ortiz did not have the time to do so. Ortiz allowed Leftwich to review her "drop file" the next day, July 20.[13]

(4) From July 25 through August 8, 2012, management issued unwarranted conduct memoranda.[14] On August 1, 2012, Ortiz wrote a memo to Leftwich documenting "failure to follow a directive/Unprofessional Behavior" regarding Leftwich's handling of sick leave.[15]

(5) On July 27, 2012, Ortiz issued to Leftwich a "Sick Leave Counseling/Warning Notice" ("sick leave memo").[16]

(6) Management unfairly charged Leftwich with work errors.

(7) On August 8, 2012, Leftwich, Ortiz and Salnaitis, manager of both Leftwich and Ortiz, met to discuss reviews and "personal space."[17] Salnaitis warned both Leftwich and Ortiz about disruption in the work place considered to be "a conduct issue."[18] On August 9, 2012, Salnaitis issued a memo to Leftwich documenting their August 8, 2012 meeting.[19]

(8) Management failed to allow Leftwich sufficient time to rebut work errors. Ortiz objected to Leftwich taking over one (1) hour to work on a "rebuttal" to a "CJE 5 review" when Ortiz only permitted ten (10) minutes to work on the rebuttal.[20]

(9) On September 26, 2012, Ortiz physically threatened Leftwich.[21]

(10) Management told Leftwich to first seek assistance from her own team's lead. In a series of October 5, 2012 emails between Ortiz and Leftwich, Ortiz directed Leftwich to address work questions to Leftwich's "team lead" rather than another "lead."[22]

(11) Management falsely accused Leftwich of taking too much time away from her desk.

(12) Ortiz walked into Leftwich's cubicle without knocking.[23]

(13) Leftwich's "team lead" unfairly questioned her about the status of cases.[24]

(14) Management issued Leftwich an "alternative discipline" notice.[25]

(15) Management issued Leftwich a sick leave restriction memo.[26]

(16) Management issued Leftwich an official reprimand.[27]

On August 7, 2012, Leftwich met with an EEO counselor regarding her concerns for "pre-complaint processing" as required by a federal regulation.[28] An EEO counselor contacted Ortiz on August 17, 2012 and Salnaitis on August 28, 2012 regarding Leftwich's complaints.[29] On October 1, 2012, Leftwich filed a formal complaint of employment discrimination with the Treasury Department ("Department").[30] Leftwich subsequently amended her formal complaint four (4) times on October 22, October 26, November 5, and November 19, 2012 to include incidents of the Department's "continued escalating harassment and retaliation."[31] After investigation, the Department issued a Final Agency Decision on January 5, 2015 finding no discrimination.[32] Leftwich filed this action on January 22, 2015.[33]

## II.   ANALYSIS

Leftwich sues Jacob J. Lew, Secretary of the Treasury, claiming discrimination and retaliation in her employment in violation of Title VII, 42 U.S.C. §2000e *et seq.*  Department moved for summary judgment.

After discovery, the Department argues Leftwich fails to establish a *prima facie* case of race discrimination because none of the alleged actions constitute an adverse employment action and she adduced no evidence the Department treated similarly situated employees who are not members of her protected class differently or under circumstances giving rise to an inference of discrimination. The Department argues even if Leftwich meets a *prima facie* discrimination case, there is no evidence of pretext.

On the retaliation claim, the Department argues some incidents occurred either before Leftwich initiated her EEO action or before its knowledge of the EEO action, the incidents occurring after the EEO activity are not materially adverse, and the Department had non-retaliatory reasons for its actions.

### A. Administrative Remedies and Standard of Review

Title VII's protections apply to federal employees.[34] Federal employees alleging Title VII employment discrimination must comply with administrative remedies before filing an action in federal court.[35] The relevant administrative remedies require an employee contact an EEO counselor for "pre-complaint processing" within forty-five (45) days of the alleged discriminatory actions in an effort to "informally resolve the matter."[36] If the matter is not informally resolved, a complaint must be filed "with the agency that allegedly discriminated against the complainant."[37] Upon "final action" by the agency, the employee may appeal to the EEOC or file an action in district court.[38] Leftwich first consulted with an EEO counselor on August 7, 2012, filed a complaint with the Department on October 1, 2012, amended it four times, and, after an administrative investigation, the Department issued a Final Agency Decision issued on January 5, 2015. Leftwich then sued.

Our record includes parts of the Department's investigative file and the Department's January 5, 2015 Final Agency Decision. We review *de novo* Leftwich's Title VII claims.[39] On summary judgment, our function is "to determine whether any issues of fact exist. While we are entitled to review the administrative record, we are also entitled to consider new evidence presented by the parties, and are not bound in any way by the determinations made by the [administrative review boards] below."[40] Under the well-settled standard, a grant of summary judgment is appropriate where "there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law."[41]

In opposing the Department's motion, Leftwich cannot rest on "mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial."[42] Leftwich must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[43] She must "do more than simply show that there is some metaphysical doubt as to the material facts."[44] "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment."[45]

### B. Race Discrimination: Disparate Treatment and Hostile Work Environment

We apply the *McDonnell Douglas* burden shifting analysis to Leftwich's claim of discrimination under Title VII.[46] As the plaintiff, Leftwich bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.[47] If Leftwich establishes a *prima facie* case, the burden shifts to the Department to articulate a legitimate, non-discriminatory reason for its actions.[48] If the Department meets its burden, "the presumption of discrimination action raised by the *prima facie* case is rebutted," and the burden is then on

Leftwich to establish the Department's proffered reasons for its action were a pretext for discrimination, "and not the real motivation for the unfavorable job action."[49]

Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . .."[50] The statute is not a "general civility code" and does not provide relief for "unpleasantness" in the workplace.[51]

To establish a *prima facie* case of employment discrimination, Leftwich must show (1) she belongs to a protect class; (2) she is qualified for the position; (3) the Department subjected her to an adverse employment action despite being qualified; and (4) under circumstances giving rise to an inference of discrimination.[52] The Department argues Leftwich fails to establish the third and fourth prongs of the *prima facie* case. The Department additionally argues even if Leftwich makes a *prima facie* showing, she fails to meet her burden to show the Department's proffered reasons for the objectionable actions were pretext for discrimination.

To establish a hostile work environment claim against the Department, Leftwich must show: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.[53] The Department argues Leftwich fails to adduce evidence other than speculation she suffered harassment motivated by racial animus.

We address the arguments *seriatim*.

### 1. Third prong of *prima facie* case: adverse employment action

The third prong of the *prima facie* case requires Leftwich to show the Department subjected her to an adverse employment action. Leftwich argues the sixteen (16) incidents

6

between April and November 2012 constitute adverse employment actions. An adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."[54] Termination, failure to promote, and failure to hire constitute adverse employment actions, and "actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions."[55]

### *Selection to the BMF project*

In support of its motion, the Department submitted Lutz's Affidavit swearing the employees he selected for the BMF project received one day of training, spent two to three months working on the project, and retained the same pay grade and level as before receiving the BMF project training and work assignment.[56] Leftwich does not dispute this.[57] Although Leftwich asserts she would have earned overtime "and exposure to another part of the IRS business" had she been selected for BMF position,[58] there is no evidence any employee selected for the BMF project received overtime. The Department asserts selection to the BMF project would not have resulted in a grade or step promotion for Leftwich.[59]  Leftwich admits this fact, but asserts her selection for the project "could have been an outstanding achievement on my work record that could potentially lead to a grade increase."[60] Leftwich presents no evidence that employees selected for the BMF project received a grade increase, and her assertion that selection for the project "could potentially lead to a grade increase" is speculation.

Leftwich contests Lutz's Affidavit, concluding he "commits perjury" regarding his selection of employees for the BMF project.[61] Leftwich contends the Department selected Regina McNamee, a Caucasian employee on Leftwich's Team 403 for the BMF project.[62] Leftwich argues, without evidence, Reggie Franklin, an African-American, selected McNamee

for the project based on recommendations from Ortiz and Linda Demers, both Caucasian.[63] Lutz swears he, as "Operation 1 Manager," decided the persons working on a backlog of cases in the BMF project.[64] Lutz selected employees from Team 401 and Team 402 to work on the BMF project based on work flow and staffing considerations.[65] Lutz swears he did not select any employees from Team 403, including Leftwich.[66] Although Leftwich challenges Lutz' affidavit, she adduces no evidence creating a dispute of material fact any employee received overtime or increase in compensation.[67]

### Computer screen, access to "drop file," entering cubicle without knocking

The computer screen turned upside down incident, Leftwich's one day wait to access her "drop file," and Ortiz entering Leftwich's cubicle without knocking are not adverse employment actions. Although the parties dispute the facts surrounding these incidents, even when we construe the evidence in the light most favorable to Leftwich, these episodes do not rise to the level of a legally sufficient adverse employment action. Leftwich does not provide us with any evidence of how these events affected her compensation, terms or conditions of her employment. These incidents constitute conduct "courts in the Third Circuit have sometimes described as 'petty slights and workplace grievances,' rather than actionable adverse employment actions."[68]

### Ortiz physically threatened Leftwich

Leftwich alleges on September 26, 2012, Ortiz whispered a threat in Leftwich's ear to the effect "I'll take care of you on my own."[69] The parties dispute the facts regarding what Ortiz actually said to Leftwich and Leftwich's perception of the comment. Even accepting Leftwich's version, there is no evidence how Ortiz's alleged threat rises to the level of an adverse employment action.[70]

*Memoranda and emails relating to conduct, sick leave, work errors and performance*

Leftwich cites memoranda in late July through early August 2012 from Ortiz regarding work behavior and conduct;[71] a sick leave counseling/warning notice memorandum[72] and a sick leave restriction memorandum;[73] unfair charges of work errors in July, September, and October 2012, including a July 25, 2012 "Embedded Quality Review System" ("EQRS") feedback report from Ortiz noting a typographical error in a letter Leftwich sent to a taxpayer in response to the taxpayer's request for information;[74] an August 9, 2012 memorandum from Salnaitis regarding Leftwich's "professional interaction" with Ortiz;[75] Ortiz's failure to provide Leftwich sufficient time to "rebut" work errors; an email exchange between Ortiz and Leftwich directing Leftwich to first seek assistance from her own "team lead" rather than another "team lead";[76] Ortiz's criticism of Leftwich regarding "too much time away from her desk;" and emails involving Linda Demers, the "team lead," questioning Leftwich about the status of her cases.[77]

Leftwich challenges the accuracy and credibility of the circumstances giving rise to these communications. She also argues, specifically as to the August 9, 2012 memorandum[78] from Salnaitis, the Department "is using the conduct memo to count towards the five required memos cited above before adverse employment actions can be done".[79] Leftwich admits Ortiz "never lowered my annual performance rating," but argues Ortiz "also never increased it which would have been warranted if the erroneous errors that plaintiff challenged were not on her record."[80] Leftwich's mid-year performance appraisal for June 1 to December 31, 2012 reflects Leftwich met or exceed expectations.[81] While the comments reflect Leftwich's performance in some areas is assessed "at a lower level of performance as your last evaluation,"[82] there is no evidence the Department demoted Leftwich or reduced her compensation as a result of the 2012 mid-year performance.

Our Court of Appeals and courts in this Circuit find actions such as performance improvement plans, negative reviews, verbal reprimands, and "write-ups" do not constitute adverse employment actions under Title VII without some change to pay, benefits or employment status.[83] We see no reason to differ from our colleagues based on the facts adduced. There is no evidence Leftwich suffered a change in her employment status as a result of these performance and conduct related incidents. These steps do not constitute adverse employment actions under race discrimination law.

### The Alternative Discipline Notice and Official Reprimand

Leftwich cites the October 26, 2012 "alternative discipline" notice and November 12, 2012 official reprimand as evidence of discrimination.[84] Leftwich argues she was offered, but declined "alternative discipline" on October 26, 2012 based on previous "unfair" and "unethical" memos.[85] The record reflects Salnaitis notified Leftwich of a possible "official letter of reprimand" for which Leftwich could request consideration of alternative discipline in accordance with the collective bargaining agreement between the IRS and National Treasury Employees Union.[86] After Leftwich declined alternative discipline,[87] Lutz issued Leftwich an "official reprimand" for "failure to follow a directive, unacceptable behavior, and creating and [sic] disturbance in the workplace."[88] Reprimands "that do not 'effect a material change in the terms or conditions of . . . employment' cannot be considered adverse employment actions."[89] There is no evidence in the record what, if any, change in Leftwich's employment status occurred as a result of the official reprimand and we cannot find these events constitute an adverse employment action. Leftwich fails carry her burden on the third prong of the *prima facie* claim of employment discrimination.

### 2. Fourth prong of *prima facie* case: conduct occurred under circumstances giving rise to an inference of discrimination.

Even if any or all the incidents between April and November 2012 constitute an adverse employment action, Leftwich presents no evidence to show these incidents occurred under circumstances raising an inference of discrimination. Leftwich must produce "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . .."[90] "The 'central focus' of the *prima facie* case "is always whether the employer is treating 'some people less favorably than others because of their race . . ..' "[91] Leftwich can support an inference of discrimination "in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus."[92]

Here, Leftwich has not adduced any evidence sufficient to raise an inference of race-based discrimination. Leftwich appears to support her claims of discrimination based solely on the fact that Ortiz and Salnaitis are Caucasian, but offers no evidence Ortiz and Salnaitis treated Leftwich less favorably than other similarly situated Caucasian employees.[93] Leftwich's subjective belief Ortiz and Salnaitis discriminated and harassed her because of her race, "without any objective foundation on which to rest that belief, is insufficient to establish racial animus."[94]

With regard to the BMF project, Leftwich alleges Regina McNamee, a Caucasian employee from Team 403 was selected for the project. Leftwich challenges Lutz's Affidavit swearing no employees from Team 403 were selected for the BMF project. However, Leftwich fails to provide us with any evidence the Department selected McNamee, or anyone else from Team 403, for the BMF project. Instead, Leftwich asserts "IRS personnel records can confirm

employment records and timesheets program codes to support assignment to BMF project" which are not in the record here.[95]

Leftwich challenges the "Sick Leave Counseling/Warning Notice[s]" issued by Ortiz to three other employees in her group; Constance Bosworth, Monica Jenkins, and John Simmons.[96] Leftwich challenges the veracity of the notices, alleging Ortiz forged and altered them, but does not indicate how the notices to Bosworth, Jenkins, and Simmons create an inference of discrimination as to Ortiz's treatment of Leftwich's sick leave notice or how those employees were treated more favorably than her. Leftwich does not challenge the calculation of her sick leave and does not deny for the period of May 6 to July 28, 2012, she was absent on ten (10) occasions totaling over fifty (50) hours of sick leave or leave in lieu of sick leave.[97] Leftwich does not assert the Department denied her leave of or explain why or how Ortiz's sick leaving warning memorandum is "unjustly and illegally issued."[98] Leftwich instead asserts she used sick time "for relief due to harassment by [her] manager," Ortiz.[99]

In sum, Leftwich fails to show any evidence, beyond her speculation, the actions of which she complains are the result of racial animus. No reasonable fact finder could conclude the Department took any action against Leftwich under circumstances giving rise to an inference of discrimination. Leftwich fails carry her burden on the fourth prong of the *prima facie* claim of employment discrimination

### 3. Pretext Analysis

The Department additionally argues even if Leftwich made out a *prima facie* case of discrimination, there is no evidence the Department's legitimate non-discriminatory reasons for its actions are a pretext for race discrimination. To show requisite pretext to defeat the Department's motion, Leftwich "must point to some evidence, direct or circumstantial, from

which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of the employer's action."[100] "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[101]

The Department proffers the following legitimate non-discriminatory reasons for the following actions: Regarding the BMF project, the Department offers Lutz's Affidavit swearing he selected employees for the project solely from Teams 401 and 402 based on work flow and staffing concerns, and did not select any employees from Team 403;[102] the sick leave warning memorandum and sick leave restriction memo are legitimate management tools to monitor employee attendance and workload and address concerns about the use of sick leave;[103] and management's criticism of work errors were reviewed by Salnaitis through the rebuttal process and found to have a basis, and there is no evidence that the Department's finding of work errors, even if wrong or mistaken, show a discriminatory animus.[104]

Leftwich fails to address the Department's pretext argument and fails to present any evidence from which a reasonable jury could either discredit the Department's proffered reasons for its actions or believe an invidious discriminatory reason is more likely than not a motivating or determinative cause of its actions. Leftwich fails to carry her burden of production on the issue of pretext under the third step of the *McDonnell Douglas* framework.

### 4. Hostile Work Environment

Leftwich alleges the sixteen (16) incidents forming the basis of her disparate treatment claim also serve as the basis of a hostile work environment claim. Leftwich refers to these incidents as "harassment" and asserts in her complaint she has been "subjected to work in extremely hostile environment." Leftwich paints a picture of dissention between her and Ortiz, other employees within Team 403, with Salnaitis and Linda Demers, a "team lead." Leftwich argues "daily harassment and retaliation that grew amongst multiple employees under the defendant's authority."[105] Leftwich asserts she suffered harm by "monetary cost and time in submitting this case, increased healthcare cost and associated increased medication and its related side effects, as well as, use of sick and vacation time to deal with these harassment issues."[106]

Discriminatory behavior through a hostile work environment must be so severe or pervasive to "alter the conditions of [the plaintiff's] employment and create an abusive working environment."[107] The work environment must be "objectively hostile, not just hostile in the plaintiff's view."[108] In determining hostility, we must consider the "totality of the circumstances" including "the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[109]

Leftwich cites: the computer screen incident; conduct memoranda; sick leave memoranda; Ortiz's failure to provide her with sufficient time to rebut a review; and, unfair questions about the status of her cases as examples of harassment. Leftwich cannot show she suffered from intentional discrimination based on her race, the first element of the *prima facie* case of hostile work environment. Even assuming the incidents on which Leftwich bases her

claims were motivated by race, we cannot find these incidents sufficiently severe or pervasive to establish a *prima facie* hostile work environment. There is no evidence these incidents so "extreme to amount to a change in the terms and conditions" of Leftwich's employment required for actionable hostile work environment claims under Title VII.[110]

We consider one incident raised by Leftwich potentially falling within the ambit of hostility: Ortiz's alleged stating to Leftwich words to the effect of "I will take care of you on my own."[111] This episode occurred on September 26, 2012.[112] Leftwich remained under Ortiz's supervision for another year, until nearly the end of 2013, when she was moved to another team.[113] Leftwich remained under Ortiz's supervision for over a year after the alleged physical threat and no other threats occurred.[114] Even construing the statement in the light most favorable to Leftwich, we find no genuine issue of fact to support an objectively hostile work environment based on the alleged threat so severe or pervasive so as to alter the conditions of her employment.

### C. Retaliation[115]

A plaintiff asserting a retaliation claim must establish a *prima facie* case by showing: "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[116] If a plaintiff makes out the *prima facie* case, the *McDonnell Douglas* framework applies "in which 'the burden shifts to the employer to advance a legitimate non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.' "[117]

15

### 1. First prong of the *prima facie* case: protected activity.

The Department concedes for purposes of the retaliation claim Leftwich engaged in protected activity from the date she met with an EEO counselor on August 7, 2012.[118] The Department argues incidents occurring prior to August 7, 2012 cannot form the basis of Leftwich's retaliation claim because there is no "protected activity" before that date. The Department reaches further, arguing incidents prior to August 12 and August 28, 2012, the dates the EEO investigator contacted Ortiz and Salnaitis, respectively, regarding Leftwich's complaints cannot be considered "protected activity" because Ortiz and Salnaitis did not know of Leftwich's EEO activity until they were contacted by the EEO counselor.[119]

Leftwich asserts "all actions cited in this civil case happened after [she] submitted EEO case (which of course starts in pre EEO stage and progress to the Civil court action we now are involved) [sic]."[120] Leftwich additionally argues her "job description calls for her manager to be aware of what and why she was spending administrative time (which has to be approved by her manager) to do EEO related activities."[121] There is no evidence in the record of Leftwich's job description or how that job description requires Ortiz "to be aware" of Leftwich's EEO activities.

The alleged adverse actions occurring before August 7, 2012 cannot serve as the basis of Leftwich's retaliation claim. Although she argues "all actions" happened *after* she submitted her EEO case, Leftwich shows no evidence of protected activity prior to August 7, 2012. Accordingly, summary judgment is entered on any of the sixteen alleged adverse actions occurring prior to August 7, 2012.

**2. Second and third prongs of the *prima facie* case: materially adverse action and causal connection.**

The Department argues Leftwich fails to satisfy her *prima facie* showing its actions were "materially adverse" and a causal connection between her protected activity and the alleged actions. Under Title VII retaliation claims, the alleged retaliatory actions must be "'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[122]  To establish the required causal connection between a protected activity and an employer's adverse action, a plaintiff may rely "on the temporal proximity between the two if 'unusually suggestive'" and, in the absence of a close temporal proximity, a "consider[ation] [of] the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer givers for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."[123]

The Department argues Claims 6 and 8 through 16 occurring after August 7, 2012 do not constitute "materially adverse actions," and Leftwich cannot satisfy the second prong of the *prima facie* case. The Department cites cases finding "minor issues" similar to those complained of by Leftwich here, are not materially adverse. The Department argues, for example, work errors charged to Leftwich (Claim 6) and Ortiz's alleged threat (Claim 9) as not materially adverse.

Leftwich responds summary judgment should not be entered on her retaliation claims because all the events are materially adverse actions and the Department "did not protect [her] from harassment and retaliatory actions."[124] Leftwich argues the Department "continually allowed management to unjustly and unethically issue discipline memos and other adverse action when [she] had documented proof of the mistreatment" and she was "previously approved to be

17

removed from Nancy Ortiz's management a year before this EEO case was submitted."[125]   It is unclear how Leftwich's assertion she "was previously approved to be removed" from Ortiz's management in 2010–2011 constitutes retaliation.[126]   Leftwich admits a year before her EEO action she "was allowed . . . to be reassigned to another manager [Ortiz]," but she "chose to give her manager [Ortiz] another chance and voluntarily stayed under her management."[127]   Leftwich admits the Department permitted a reassignment to another manager a year before filing her EEO action and she chose to voluntarily stay under Ortiz's management. This episode does not support her retaliation claim; to the contrary, it undercuts her argument. Leftwich contends Ortiz's alleged discrimination and harassment of her began as far back as 2010, progressively grew, and "there were issued [sic] raised prior to the submission of EEO case that allowed" Leftwich to be reassigned to another manager, but Leftwich nevertheless chose to stay with Ortiz.

Leftwich cites a January 12, 2015 email from Linda Murdock and Salnaitis dated January 12, 2015.[128] Leftwich does not identify Murdock's position in the IRS or the context of the email. Murdock reports she "canvassed an abundance of employees, leads, and managers in TPR about the subject," and "a majority of them feel safe in their work environment and would not hesitate to report any wrongdoing or elevate an issue."[129] Murdock reports a "few concerns" employees "fee[l] physical safe, but reluctant to report wrongdoing or elevate concerns for fear of retaliation."[130] Leftwich argues the Murdock/Salnaitis email evidences a materially adverse action because other employees are "reluctant to report wrongdoing or elevate concerns for fear of retaliation." We do not find Murdock's January 2015 email has any nexus to a materially adverse action vis-à-vis Leftwich. It is far from clear how the email demonstrates a reasonable employee would be dissuaded from engaging in protected activity, and Leftwich does not do so.

18

Leftwich cites no legal authority supporting her position that the Department's actions constitute "materially adverse" actions. The incidents consist of management's alleged unfairly charging Leftwich with work errors; Salnaitis' August 8, 2012 memorandum memorializing the meeting with Leftwich and Ortiz regarding reviews and conduct issues; Ortiz's failure to allow Leftwich sufficient time to rebut a review; Ortiz's threat; management's directive to Leftwich she should first seek assistance from her own team's lead; an accusation Leftwich took too much time away from her desk; Ortiz coming into Leftwich's cubicle without knowing; alleged unfair questions about the status of Leftwich's cases; the alternative discipline memo; and official Letter of Reprimand. Leftwich does not explain or show any of these events might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Actionable retaliation must be material, causing "significant" rather than "trivial harms."[131] The Supreme Court instructs:

> An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.[132]

We do not find Leftwich makes out a *prima facie* case on any events occurring after August 7, 2012, with the exception of the November 14, 2012 Letter of Reprimand ("Reprimand") which we address below.

### 3. *Prima facie* retaliation based on the November 14, 2012 Letter of Reprimand.

With regard to the "materially adverse" prong of the *prima facie* case, the Department asserts "the only possible action that could satisfy the materially adverse element" is the

November 14, 2012 Reprimand.[133] The Department argues even if the Reprimand is considered a materially adverse action, Leftwich cannot show a causal connection between her protected activity and the Reprimand.

The Reprimand is based on Leftwich's "failure to follow a directive, unacceptable behavior and creating and [sic] disturbance in the workplace," relying on five (5) incidents on July 27, August 8, September 21, September 24, and October 12, 2012.[134]   Leftwich argues the Reprimand follows disciplinary memoranda issued within a month of her EEO action. Given the Department's failure to provide any meaningful argument on the causal connection prong – arguing in one line "Plaintiff cannot establish that causal connection as the IRS' decision to reprimand her is based upon her unprofessional behavior over several months and not as a result of her EEO complaint" – we find there is at least a genuine issue of fact as to a *prima facie* case of retaliation based on the Reprimand.

> **4.   There is no evidence the Department's proffered explanation for the Reprimand is false, and retaliation is the real reason for the adverse employment action.**

While Leftwich satisfies a *prima facie* claim of retaliation based on the Reprimand, we find she fails to meet to discredit the non-retaliatory reason for the Department's issuance of the Reprimand. The Department asserts starting in July 2012, Leftwich's behavior became increasingly unacceptable and unprofessional, and the Reprimand followed a series of warnings and counseling beginning prior to her EEO complaint. Leftwich argues after she began the EEO process, the Department subjected her to a continuum of discipline memos, suggesting a pattern of antagonism in retaliation for her EEO activity.

To survive summary judgment, Leftwich must produce some evidence from which a jury could reasonably reach the conclusion the Department's "proffered explanation was false, and

that retaliation was the real reason for the adverse employment action."[135]  The record is devoid of any evidence from which a jury could reasonably reach such a conclusion.

Leftwich provides no evidence the grounds in the Reprimand are false or issued for a retaliatory reason.  Leftwich admittedly did not follow Ortiz's direction to take only ten (10) minutes to prepare a rebuttal to a work review, and admittedly took one hour and ten minutes to prepare the rebuttal.[136]  Leftwich does not dispute the accuracy of the contents of Ortiz's August 8, 2012 conduct memo regarding the rebuttal time.[137]  There is no evidence regarding the September 21, September 24, and October 12, 2012 incidents on which the Reprimand relies. While we give deference to her as the party responding to a summary judgment motion and mindful of her *pro se* efforts, Leftwich fails to adduce evidence creating any genuine issue of material fact regarding pretext.  We cannot allow speculation and intuition to proceed to the jury without facts.

### III.   CONCLUSION

Patrice Leftwich undoubtedly believes her Department supervisors improperly treated her differently than Caucasian employees and when she complained, they retaliated.  Beliefs alone do not proceed to a jury and possible judgment.  Ms. Leftwich needs to adduce facts relating to the legal issues in a race discrimination and retaliation case.  In this case, she has not done so.  In the accompanying Order, we grant the Department's motion for summary judgment as there are no genuine issues of material fact and Leftwich cannot adduce evidence of race discrimination, retaliation, and hostile work environment in violation of Title VII.

[1]  Our Policies require a Statement of Undisputed Material Facts ("SUMF") be filed in support of a Fed.R.Civ.P. 56 motion, as well as an appendix of exhibits or affidavits. The Department filed its SUMF at ECF Doc. No. 25-1 ("Dept. SUMF"). The Department filed an Appendix at ECF Doc. Nos. 25-2 through 25-5. Leftwich responded to the Department's SUMF at ECF Doc. No. 31 referred to as "Leftwich SUMF." Leftwich added documents to the Appendix at ECF Doc. Nos. 26 and 26-1. References to exhibits in the appendices shall be referred to by Bates number, for example, "Appendix (A.) 1."

[2]  Dept. SUMF at ¶ 1; Plaintiff's Request for Appointment of Attorney at ¶4 (ECF Doc. No. 1-1).

[3]  Dept. SUMF at ¶ 2.

[4]  *Id.* at ¶¶3, 6.  There is evidence Leftwich's second level superior in April 2012 was Reggie Franklin, an African American male. *See* Affidavit of Randal Lutz at ¶ 6 (A.112). At some point "soon afterwards," Salnaitis became Department 4 manager and Leftwich's second level superior. *Id.*

[5]  *Id.* at ¶¶ 4, 7.

[6]  *Id.* at ¶¶ 8-10.

[7]  Lutz  Affidavit at ¶¶3, 5, 7 (A. 112).

[8]  Leftwich alleges she is the subject of a continuing hostile work environment "until January 2015." *See* Complaint at 3 (ECF Doc. No. 3). Leftwich's response to the Department's motion asserts "discriminatory and harassment issues committed by manager Nancy Ortiz" pre-dating her first EEO action in August 2012. *See* Leftwich Response at 2 (ECF Doc. No. 26). Leftwich asserts she "elevated to management" these issues "starting back in 2010." *Id.*  Leftwich includes in her appendix a June 2010 memorandum from Ortiz documenting tardiness (A. 141). Leftwich further asserts ongoing retaliation and harassment caused her to submit two (2) additional complaints to the EEO. *See* Leftwich response at 2. The only claims properly before us are those arising from the April to November 2012 events submitted to the EEOC and investigated by the Department.

[9]  Dept. SUMF at ¶ 20.

[10]  *Id.* at ¶ 27.

[11]  *Id.* at ¶ 28.

[12]  The Department identifies a "drop file" as a temporary personnel file maintained by managers which contain current records, but is not an employee's permanent personnel file. *See* Department's brief at 8, n.6 (ECF Doc. No. 25).

[13] Dept. SUMF at ¶¶ 33-35.

[14] A. 93, 95, 97.

[15] A. 95.

[16] A. 98.

[17] A. 202.

[18] A. 202.

[19] A. 99.

[20] A. 97.

[21] A. 181.

[22] A. 213.

[23] A. 65.

[24] A. 63-64.

[25] A. 100-101.

[26] A. 60-62.

[27] A. 110-111.

[28] A.50, 127. *See* Section II.A., *infra*.

[29] A. 127-128.

[30] A. 49.

[31] *See* Department's Final Agency Decision at 1 (ECF Doc. No. 3); Leftwich Response at 5 (ECF Doc. No. 26).

[32] *Id.*

[33] ECF Doc. No. 1

[34] *Chandler v. Roudebush*, 425 U.S. 840, 841 (1976). *See also Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997) ("Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16,

established the exclusive remedy for federal employees who allege discrimination in the workplace.")

[35] *Robinson*, 107 F.3d at 1020-21; *Johnson v. Gober*, 83 F.App'x 455, 460 (3d Cir. 2003).

[36] 29 C.F.R. § 1614.105(a)

[37] 29 C.F.R. §1614.106(a)

[38] 29 C.F.R. §1614.110; 42 U.S.C. §2000e-16(c).

[39] *Chandler*, 425 U.S. at 846, 863-64.

[40] *Broadl v. Geithner*, 752 F.Supp.2d 540, 556-57 (E.D. Pa. 2010) (quoting *Cohen v. Austin*, 861 F.Supp. 340, 350 (E.D. Pa. 1994)).

[41] Fed.R.Civ.P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir.2006)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of its case. *Burton*, 707 F.3d at 425 (citing *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). The court must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* (citing *Scheidemantle*, 470 F.3d at 538). To prevail on a motion for summary judgment, however, "'the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Id.* (quoting *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (alteration in original)); *see also Anderson*, 477 U.S. at 252.

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted).

[44] *Taylor-Bray v. Delaware Dep't of Servs. for Children, Youth & their Families*, No. 15-1848, 2015 WL 5561295, at *2 (3d Cir. Sept. 22, 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)).

[45] *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) (citing Fed.R.Civ.P. 56(e)).

[46] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[47] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

[48] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

[49] *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 255 (1981)).

[50] 42 U.S.C. § 2000e–2(a)(1).

[51] *Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 80 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Barnees v. Nationwide Mut. Ins. Co.*, 598 F.App'x 86, 90 (3d Cir. 2015); *Walker v. Centocor Ortho Biotech, Inc.*, 558 F.App'x 216, 219 (3d Cir. 2014).

[52] *Sarullo*, 352 F.3d at 797.

[53] M*andel v. M & Q Packaging Corp.*, 706 F.3d, 157, 167 (3d Cir.2013).

[54] *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).

[55] *Walker*, 558 F.App'x at 219 (citing 42 U.S.C. §2000e-2(a)(1); *Storey*, 390 F.3d at 764).

[56] Dept. SUMF at ¶ 22; A. 114 at ¶¶ 18-19.

[57] Leftwich SUMF at ¶ 22.

[58] Leftwich Response at 3 (ECF Doc. No. 26).

[59] Dept. SUMF at ¶ 23.

[60] Leftwich SUMF at ¶ 23.

[61] *See* Leftwich response at 3 (ECF Doc. No. 26).

[62] *Id.*

[63] *Id.* at 3-4.

[64] Lutz Affidavit at ¶¶ 8-10, A. 113.

[65] *Id.* at ¶¶ 11-15.

[66] *Id.* at ¶16.

[67] The Department provides an additional ground for its motion, arguing Leftwich failed to timely initiate her administrative remedies as to the April 2012 BMF claim. *See* Department's

brief at 6, n. 5 (ECF Doc. No. 25). As set forth above, federal regulations require a federal employee to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. §1614.105(a)(1). Exhaustion of administrative remedies "requires both consultation with an agency counselor and filing a formal EEOC complaint within the required times." *Robinson*, 107 F.3d at 1021. The BMF project selection occurred in April 2012. It is undisputed Leftwich consulted with an EEO counselor on August 7, 2012. Dept. SUMF at ¶ 52; Leftwich SUMF at ¶ 52. The record does not indicate the date in April when the Department did not select Leftwich for the BMF project. Even assuming the event occurred on April 30, 2012, there is no dispute August 7 is more than forty-five (45) days from April 30, 2012.  This is an additional basis for the entry of summary judgment in favor of the Department as to the BMF incident. *See Raffaele v. Potter*, No. 09-3622, 2010 WL 816847, *8-*9 (E.D. Pa. Mar. 4, 2010).

[68] *Yarnall v. Phila. School Dist.*, 57 F.Supp.3d 410, 321 (E.D. Pa. 2014) (collecting cases).

[69] Leftwich dep. at 97; A.30.

[70] In her response to the Department's motion, Leftwich additionally alleges her "personal water" inside her locked desk drawer was "tainted," constituting "another attempt . . . to physically harm me." Leftwich Response at 8. The water bottle incident occurred in September 2013, after the time period contained in the EEOC and Department investigation and is not, therefore, properly before us.

[71] A.93, 95, 97.

[72] A. 98.

[73] A.60-62.

[74] A. 51-53.

[75] A. 99.

[76] A. 213.

[77] A. 63-64.

[78] A. 99.

[79] Leftwich Response at 7.

[80] *Id.*

[81] A. 206-211.

[82] A. 209-211.

[83] *See Reynolds v. Dept. of Army*, 439 F.App'x 150, 153 (3d Cir. 2011) (performance improvement plan is not an adverse action absent accompanying changes to pay, benefits, or employment status); *Yarnall*, 57 F.Supp. 3d at 422 (verbal reprimands and "write-ups" do not constitute adverse employment actions under Title VII); *Brodgon v. Univ. of De.*, No. 13-1600, 2015 WL 167686, * 4 (D. Del. Jan. 13, 2015) ("Being called names, receiving negative reviews, and generally feeling ostracized, without more, do not amount to race-related discrimination.")

[84]  A.100-101, 110-11.

[85]  Leftwich Response at 10.

[86]  A.100-101.

[87]  Leftwich is inconsistent on whether she declined alternative discipline. In her response to the Department's motion, Leftwich asserts "Plaintiff was offered and declined an AD notice because plaintiff was unfairly and unethically given the preceding written memos to reach the AD Notice level." *See* Leftwich Response at 10. However, Leftwich denied the Department's SUMF at ¶ 72 asserting "Plaintiff refused to avail herself of the Alternative Discipline process despite knowing that regular discipline would then be the result of this refusal." *See* Leftwich SUMF at ¶72.

[88] A. 110-111.

[89] *Mieczkowski v. York City School Dist.*, 414 F.App'x 441, 446-47 (3d Cir. 2011) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2011)).

[90]  *Kier v. F. Lackland & Sons, LLC*, 72 F.Supp.3d 597, 608-09 (E.D. Pa. 2014) (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999)).

[91] *Sarullo*, 352 F.3d at 798 (quoting *Pivirotto*, 191 F.3d at 352).

[92] *Golod v. Bank of Amer. Corp.*, 403 F.App'x 699, 702 n.2 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)).

[93] *Mandel*, 706 F.3d at 170.

[94]  *Kier*, 72 F.Supp.3d at 609; *see also Tillman v. Redevelopment Auth.*, No. 12-505, 2013 WL 5594701, *8 (E.D. Pa. Oct. 11, 2013) (In age discrimination claim, "a plaintiff's own unsubstantiated, subjective beliefs or suspicions alone would not suffice to persuade a rational trier of fact that age was a factor in the termination decision.")

[95] Leftwich Response at 3.

[96] A. 130-136.

[97] Dept. SUMF at ¶ 46; Leftwich SUMF at ¶ 46.

[98] Leftwich Response at 5.

[99] Leftwich SUMF at ¶ 46.

[100] *Burton v. Teleflex Inc.,* 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[101] *Id.* (internal quotations and citation omitted).

[102] Department's brief at 5.

[103] *Id.* at 10, 17.

[104] *Id.* at 10-11.

[105] Leftwich Response at 2.

[106] *Id.*

[107] *Mandel,* 706 F.3d at 167 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

[108] *Greer v. Mondelez Global, Inc.*, 590 F.App'x 170, 173 (3d Cir. 2014) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[109] *Id.* (quoting *Harris,* 510 U.S. at 23).

[110] *Faragher*, 524 U.S. at 788.

[111] A. 97.

[112] *Id.*

[113] *Id.*

[114] A. 30-31.

[115] The Department argues in a footnote our Court of Appeals has not yet addressed whether the "materially adverse" standard of *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("*Burlington Northern*") applies to federal sector employees. *See* Department's brief at 22, n. 11. The Department argues unlike the provision of Title VII applying to private sector employees, the federal sector provision "does not *separately* prohibit retaliation," and the "materially adverse" standard "may not apply to federal sector employees." *Id.* (emphasis in original). The Department suggests the "materially adverse" standard, requiring only a showing the employer's

alleged retaliatory actions could dissuade a reasonable employee from engaging in protected conduct, may not apply to Leftwich as a federal employee and the more stringent "adverse action" standard requiring a showing of a change in the terms and conditions of employment would apply here. We will apply the *Burlington Northern* materially adverse standard. While it appears our Court of Appeals has not addressed this issue in a precedential opinion, we note it applied the "materially adverse" standard in a non-precedential decision to a former federal air marshal's retaliation claims against Janet Napolitano, Secretary, Department of Homeland Security. *See McCullers v. Napalitano*, 427 F.App'x 190, 195-96 (3d Cir. 2011).

[116] *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[117] *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)).

[118] Department's brief at 21.

[119] Department's brief at 20. To establish the required causal connection, there must be "some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 197-97 (citations omitted).

[120] Leftwich Response at 2-3.

[121] Leftwich Response at 11.

[122] *Moore*, 461 F.3d at 341 (citing *Burlington Northern*, 548 U.S. at 68).

[123] *Daniels*, 776 F.3d at 196 (citations omitted).

[124] Leftwich Response at 11.

[125] *Id.*

[126] Leftwich Response at 5.

[127] Leftwich Response at 3.

[128] A. 144.

[129] *Id.*

[130] *Id.*

[131] *Burlington Northern*, 548 U.S. at 68.

[132] *Id.* (internal citations and quotations omitted).

[133] A. 110-111.

[134] *Id.*

[135] *Moore,* 461 F.3d at 342 (citing *Krouse*, 126 F.3d at 500-01).

[136] Dept. SUMF at ¶ 54; Leftwich SUMF at ¶54; Leftwich deposition at A. 17.

[137] Leftwich deposition at A. 18.